New Orleans & N. E. R. Co. *v.* Will Mobly.

[63 South. 665.]

1. Master and Servant. *Liability for injury to servant.  Care required.*
   A servant of a railroad company who, after his day's work, was permitted, by the company, to sleep in a caboose standing on its side track is entitled to receive, at the hands of the company, ordinary care to prevent. injury to him.

2. Same.
   In such case where the servant, when he was injured, was not in the performance of any duty for the railroad, was familiar with the surroundings and knew the- train had to be moved in order to locate it for the night, the fact that he was injured by a sudden jerk of the cars while he was in the act of boarding the same, does not show a want of ordinary care on the part of the railroad company.

APPEAL from the circuit court of Lauderdale county.
HON. JNO. L. BUCKLEY, Judge.

Suit by Will Mobly against the New Orleans and Northeastern Railroad Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*R. H. & J. H. Thompson* and *A. S. Bozeman,* for appellant.

Under the facts in this case, as testified to by the plaintiff himself, there was absolutely no duty owing by the defendant to the plaintiff, at the time of his injury, which the defendant neglected or failed to perform, and it cannot be said, therefore, that the injury to the plaintiff was caused by any negligence on the part of the railroad company, and the court below erred in refusing the peremptory instruction asked by the defendant.

The principles of law which control in this case are briefly and clearly stated by this court in the case of *Morehead* v. *Railroad Co.,* 84 Miss. 112; *Murdock* v. *Railroad,* 77 Miss. 487; *Railroad Co.* v. *Jones,* 35 So. 193.

Mobley, his day's work being done, in attempting to get on the coach for his own convenience merely, was at best a mere licensee, and the railroad company was under no obligation to him, except to do him no wilful wrong, and since there was no duty or obligation resting upon the railroad company to Mobley, at this time and place, there could have been no negligence or breach of duty on its part toward him. *Railroad Co.* v. *Lucas,* 89 Miss. 411.

We submit further that in attempting to get on the moving car on the main line at nine o'clock at night, without any notice to any of the crew, that Mobley was guilty of such contributory negligence as to bar his right to recovery. *Nichols* v. *Railroad,* 83 Miss. 126.

So it was held by this court, in the case of *Collins* v. *Railway Co.,* 89 Miss. 375, that in the absence of a showing that he was seen by an employee of the defendant

railroad company, a plaintiff is not entitled to recover of a railroad company for injuries suffered from the sudden jerking of a train on which he sought to take passage, as it approached a crossing, where it generally stopped; although persons were accustomed to do just what the plaintiff was there attempting to do.

We deem it unnecessary to cite cases in support of the rule which we rely upon, so often announced by this court, that the railroad company owes no duty to a trespasser or a mere licensee, except to abstain from wilful, or wanton injury.

Notwithstanding the *prima facie* statute it was the duty of the court below in this case to give a peremptory instruction for the defendant, because all the facts relating to the injury are in evidence and they clearly and fully exonerate the railroad company from any liability.

This court said, in the recent case of *Fuller* v. *Railroad Co.*, 100 Miss. 705: "Presumptions in all cases must yield to facts, yet they fail, not because of the law, but because of the facts, and completely destroy the presumption; and hence when the statute, which is the law, gives this presumption, the courts have no right to make or charge a different rule. In so doing the court is substituting judge-made law for statutory law. Of course, when all the facts relating to the injury are in evidence, the court has a right to draw a conclusion based upon the facts, and in proper cases to give a peremptory instruction as these facts may justify."

And this expression of the court was reiterated and approved by this court in the still later case of *Billingsley* v. *Railroad Co.*, 100 Miss. 612.

In the Billingsley case the court below granted a peremptory instruction for the defendant, notwithstanding the *prima facie* statute, and this was approved and affirmed by this court.

*Fewell & Cameron,* for appellee.

Plaintiff was entitled to a judgment under one of two theories. If he was to be believed, he was entitled to an instruction in his favor. If he wasn't to be believed then, under the undisputed proof that he was injured by the running of the defendant's train, he was entitled to a peremptory instruction because the defendant failed to prove how he was injured.

So we say the judgment was and is correct and on this theory the judgment should be affirmed even though errors appear. It is monstrous to say that the appellant owed the appellee no duty except to refrain from wilfully or wantonly injuring him, in view of the testimony in this case. The appellee was not a trespasser, certainly. Was he a mere licensee?

29th Cyc. 451, defines a licensee to be a person, who is neither a passenger, servant nor trespasser, and not under any contractual relation with the owner of the premises, and is permitted to come upon the premises for his own interest, convenience or gratification.

Is such a definition applicable to this appellee under the facts of this case? Is it possible that any court will or would hold that Mobley was a licensee as defined above? We think he was not a licensee.

Our supreme court, speaking through Chief Justice WHITFIELD in the case of *Owens* v. *Railroad Company,* reported in 94 Miss. 378 (and this case is based upon the alleged liability of a railroad company to a little child, the daughter of the foreman of an extra gang, injured by the turning or tilting of a plankway between two of the defendant's cars) said: "It is not entirely accurate to say that she was a mere licensee. Undoubtedly she was not a trespasser in any sense. She was where she was with the full knowledge and consent of this company, in accordance with its usage and custom, and, being where she was, with such full knowledge and consent on the part of the company itself, etc., it certainly did owe her, in

her situation, being where she was, with the knowledge and consent of the company, the duty of ordinary care.'' ''We are clearly of the opinion that the degree of care was more than the duty of not wilfully injuring her, that the company owes her ordinary care, etc.''

This was said in a case wherein it was set up that the railroad had issued instructions against living in the cars and wherein it was shown that the little girl occupied no contractual relations with the defendant.

Now applying this case as a test and working it into the definition stated above from Cyc., how can it be plausibly asserted that this company, in this case, under the facts and circumstances surrounding Mobley's injury owed Mobley only the duty of not wilfully or wantonly injuring him?

The company in this case was charged with the knowledge that this coach was being used and occupied by these darkies as it was being used on this occasion. It had been so used for about two months.

Even gross negligence would have entitled plaintiff to recover even if he was a mere licensee. Yet none of the instructions of the defendant based upon the assumption that he was a licensee, referred to this kind of negligence as entitling plaintiff to recover under their theory. They, of course, were refused and even under the theory of the appellant they were properly refused.

The supreme court of Mississippi has held time and time again that the instruction on the *prima facie* statute was proper even though a host of witnesses saw the accident. And this court just recently reversed a case because of the refusal of the court to grant an instruction upon the statute. And yet this is set up as one of the grounds for reversal.

Defendant's servants in charge of this train must have known, or should have known, that the darkies in this coach had had no supper. They must have known that it was the most reasonable thing in the world; the nat-

ural and expected thing for them to want their food. They are charged with the knowledge that they will very probably try and get something to eat or that they will alight from this car at Picayune. What is done by the servants of the company, under this imputation of knowledge? Nothing. No care is exercised by them. They just go ahead as if they had a carload of cattle attached to the engine or that whatever human was in the coach would not alight from the train. They acted on the assumption that these darkies would not do the expected or reasonable thing. And feeling that they owed this coach of negroes no duty whatsoever, except the duty graciously given by counsel, not to wilfully or wantonly injure them.

It was the natural thing for this little darkie to undertake to get something to eat. Even Mr. Bozeman assumed this because he thought that perhaps the appellee had gone to get a stalk of sugar cane. And Mr. Bozeman was not in as good position to know the habits of a little negro as the men who worked them and observed their daily habits. The case of *R. R. Co.* v. *Stroud,* 64 Miss. 784, is not a parallel case at all. Stroud was not an employee but was a trespasser. He occupied no contractual relation with the railroad company.

The case of *Mobile & Ohio* v. *Watley,* 69 Miss. 145, has no application to the case at bar. This was a little child for whose death its father sued. This is a case of imputed negligence on the part of the parent. The similarity of this case and the case at bar exists only in "pipe dreams" and the two cases are as far as part as the poles.

The case of *N. O. & T.* v. *Williams,* 69 Miss. 631, is in the same attitude with the case at bar as the case of Watley above.

The case of *Railroad Co.* v. *Lee,* 71 Miss. 895, is not in point, nor decisive of the case at bar. In that case the supreme court held that plaintiff's mother was conclusively shown to have been guilty of contributory negligence. She was not an employee nor did she occupy any

contractual relation with the company. It cannot be considered, in our judgment, as being conclusive or decisive of the case at bar.

The case of *Railway Co.* v. *Pittman*, 97 Miss. 422, has no application. On its facts Pittman was a trespasser; was neither an employee, nor did he occupy any contractual relation with the railroad. And even this case lays down the rule to be that "Even trespassers on railroad tracks cannot be recklessly or wantonly injured."

So we contend and submit that none of the above cases referred to in counsel's brief are in point. In our judgment they have absolutely no application to the facts of the case at bar. As the fireman of this train testified about his bell, "It was absolutely ringing," we say the cases are absolutely inapplicable to the facts and circumstances of the case at bar.

The case of *Morehead* v. *R. R. Co.*, 84 Miss. 112, has no sort of application to the case at bar. That case shows that there was no breach of duty, rule or custom on the part of the company, and the court held that plaintiff was guilty of contributory negligence defeating any recovery.

We have no fault to find with the cases of *Murdock* v. *R. R.*, 77 Miss. 487 and *R. R. Co.* v. ————, 35 So. 193, as they both are in line with the holding of the above case and cannot by any stretch of the imagination be made to apply to this case.

In the case at bar the rules required some sort of warning and it was negligent to fail to give same. In addition to this appellee was the servant of the company.

REED, J., delivered the opinion of the court.

Will Mobly, a minor, by next friend, sued the New Orleans & Northeastern Railroad Company for damages from personal injury, resulting in the loss of a leg, inflicted upon him by a running train of the railroad company. A verdict was returned in his favor for three thousand dollars.

One of the assignments of error in this appeal is the refusal by the trial court to grant a peremptory instruction in favor of the appellant. We are therefore brought to consider whether the facts in this case show that appellant has been guilty of negligence so as to render it liable for damages by reason of the injuries suffered by appellee.

Will Mobly, at the time when he was injured, September 2, 1907, was employed by the railroad company as a laborer on one of its work trains. His duties were to assist in the handling of the dirt carried on the train and to look after hot boxes. This train was operating south of Picayune, on the line of the railroad company, and it stopped, or was "tied up," at night at Picayune. Mobly had been in this employment for about two months before he was injured.

On the night of the accident this work train reached Picayune about nine o'clock. It was accustomed to stand for the night on a side track. It seems that when the work train reached Picayune a passenger train was about due, and it had to wait until that train passed before it could be switched and placed where it was to remain for the night. Attached to this work train was a coach used as a caboose. Mobly and several others rode in this coach in coming to Picayune. He and others, among the laborers, were in the habit of sleeping in this coach. It does not appear that the railroad company provided bunks or sleeping places for the laborers in the coach, but no objection was made to their using it as a place to sleep at night; and in fact this was a permissive use. When the work train reached Picayune, and while it was waiting for the passenger train to pass, Mobly left the coach in which he had been riding and went to a boarding house about a block away to obtain something to eat. He found the house closed and returned to the coach for the purpose of sleeping there for the night. According to his statement, he attempted to board the coach at the end

next to the engine, and, as he caught the handhold for the purpose of getting on the steps, the train was suddenly moved with a jerk, so that he was thrown under the wheels of the coach, dragged for a distance, and sustained such injury to his leg as to render amputation thereof necessary. He testified that he heard no signals given for the moving of the train, and that he did not see the engineer or conductor, or any of the train crew, on the side where he was endeavoring to board the coach, and that none of these trainmen knew that he was there trying to get on the train.

The passenger train which was due passed while Mobly was out of the coach. He says that he did not know that it had passed. After the passenger train had gone by, it was necessary for the work train to be moved about in order to locate it on the track where it was to "tie up" for the night. It is in testimony that the bell was ringing before the engine was started, and that the engineer moved in answer to the brakeman's signal. Mobly only says that he did not hear the bell.

There was a cinder pile on the side of the track where Mobly attempted to board the car. It was where the engines were cleaned and had been there for some years. The trainmen were accustomed to use the other side of the track in handling cars. When Mobly was found after he was injured he was on this cinder pile. There is no testimony showing that there was any defect in the train. The steps and handholds on the coach were shown to be in safe condition.

All that occurred at the time Mobly was injured is in evidence. He claims negligence by the railroad company in suddenly jerking the train.

Mobly's day's work was done when the train reached Picayune. He testified that he did not have any more work to do on the train that night. It was no part of his duty to be on or about the train after it arrived at Picayune. He stated that he could leave the coach and re-

turn to it whenever he desired. When he left the car he knew that the train had not been finally located for the night, and therefore that it was to be further moved. His use of the coach after it reached Picayune, his going out of it, returning to it, and sleeping in it were for his own convenience and pursuant to his own, personal choice. When he was injured he was not in the performance of any duty for appellant. Because he was an employee, appellant allowed him to occupy the coach at night. He was familiar with the surroundings and knew what was being done in order to locate the train for the night. He certainly knew that the train had to be moved. Knowing all of this, he took upon himself some risk in voluntarily leaving the car and returning thereto. Surely it was not the duty of the appellant company to keep informed as to all of his movements and watch over him to see that he was not injured in leaving and returning to the coach.

We do not say that appellee was a mere licensee; but, under all of the circumstances and facts of the case, we think that appellant only owed him the duty of ordinary care. This duty we believe was fulfilled.

Appellant's counsel, in their brief, contend that, from appellee's own testimony, appellant was entitled to a peremptory instruction, because such testimony shows that the servants of the railroad company were not guilty of any negligence towards the appellee which could be the proximate cause of his injury. They are right in this contention.

Reversed, and judgment here for appellant.

*Reversed.*